UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EARL JOHNSON,

    Petitioner,

-vs-                                                Case No. 8:04-CV-094-T-27MSS

CHESTER LAMBDIN, et al.,

    Respondents.
_____/

## ORDER

    Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the United States District Court, Middle District of Florida, Fort Myers Division, on December 29, 2003.[1] Petitioner is challenging a 2001 conviction for second degree murder entered by the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1). The case was transferred to this Court pursuant to Local Rule 1.02(c). The matter is now before the Court for consideration on the merits. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2006).

### Discussion

    State prisoners whose convictions became final after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), have one year from the latest of any of four events to file a § 2254 petition: (1) the date on which the conviction became final; (2) the date on which any state-imposed impediment to filing the

---

[1] Although the motion was not received by the Clerk's office for filing until January 14, 2004 (Dkt. 1), this circuit considers § 2254 petitions for habeas relief and documents related thereto "filed" when a *pro se* prisoner delivers one of them to a prison official for mailing. *See Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999).

petition is removed; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). These limitation provisions are applicable in this case because the petition was filed after the AEDPA's enactment date.

Having performed the review of the petition required under Rule 4, Rules Governing Section 2254 Cases, the Court concluded *sua sponte* that it may be time barred pursuant to § 2244(d)(1). *See Jackson v. Sec. for the Dep't. of Corrs.*, 292 F.3d 1347, 1348-49 (11th Cir. 2002) (before addressing the merits of a state prisoner's request for federal habeas relief, a district court must determine whether the petition is barred by § 2244(d)(1)'s statute of limitation). The Court directed Petitioner to show cause why the petition should not be dismissed as time barred.[2] Petitioner has filed his response to the show cause order (Dkt. 13), and Respondents have filed a limited response to the habeas petition addressing the timeliness issue (Dkt. 19).

In the instant case, the record reveals that on February 23, 2000, the State filed an Information charging Petitioner with one count of second degree murder. On January 5,

---

[2] *Day v. McDonough*, __ U.S.__, 126 S.Ct. 1675, 1684 (April 25, 2006) (district courts are permitted to consider sua sponte the timeliness of a state inmate's habeas petition, but must accord the parties fair notice and an opportunity to present their positions). In the instant case, Petitioner presented his position on the issue of timeliness in his response to the show cause order (Dkt. 13).

2001, Petitioner, represented by counsel, entered a plea of nolo contendere and was sentenced to serve a term of 22 years in prison (Dkt. 21, Ex. 1).

On February 5, 2001,[3] Petitioner filed a motion to withdraw his plea pursuant to Fla. R. Crim. P. 3.170[4] (Dkt. 21, Ex. 7). In his motion, Petitioner alleged that an exculpatory witness was prepared to testify that Petitioner, in fear for his own life, acted in self-defense when he killed the victim.[5] On February 13, 2001, the trial court entered an order denying Petitioner's motion to withdraw his plea, stating, in pertinent part:

---

[3] As Respondents point out, there is a discrepancy between the date in the certificate of service (February 2, 2001), and the date the document was notarized (February 5, 2001). Thus, Petitioner could not have surrendered the document to prison officials for mailing on February 2, 2001.

[4] Under Florida law, a defendant can move to withdraw a plea before a sentence is rendered under Fla. R.Crim. P. 3.170(f) or 3.172. See Harrell v. State, 894 So.2d 935 (Fla. 2005). After the sentence has been rendered, the defendant has 30 days within which to file a motion to withdraw a plea under Rule 3.170(l) only on the grounds set out in Fla. R. App. P. 9.140(b)(2)(A)(ii) ("A defendant who pleads guilty or nolo contendere may otherwise directly appeal only (a) the lower tribunal's lack of subject matter jurisdiction; (b) a violation of the plea agreement, if preserved by a motion to withdraw plea; (c) an involuntary plea, if preserved by a motion to withdraw plea; (d) a sentencing error, if preserved; or (e) as otherwise provided by law"). See Lepper v. State, 826 So.2d 363 (Fla. 2d DCA 2002). Otherwise, Rule 3.850(a)(5) is the only rule under which a petitioner's motion to withdraw a plea can be properly brought. Id. at 364. Petitioner moved to withdraw his plea on a ground that was not cognizable under Fla. R. Crim. P. 3.170, to wit, the availability of new evidence that would establish that he "was in fact in fear of his own life and used the force only necessary to protect [his] own life" (Dkt. 21, Ex. 7). Given the proscriptive language of the rule and the trial court's finding that the ground for relief Petitioner presented in his motion to withdraw his plea was not cognizable under Rule 3.170(l), the Court concludes that the motion was not a "properly filed" application for state post-conviction relief. See 28 U.S.C. § 2244(d)(2); Colbert v. Head, 146 F.App'x 340, 342 (11th Cir. 2005). It is well settled that "state courts are the ultimate expositors of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).

[5] In rejecting this claim in Petitioner's Rule 3.850 proceedings, the trial court found as follows:

> The evidence presented by Defendant consist[s] of a witness who engaged in conversations with the victim, [sic] at least eight weeks prior to the incident, [sic] regarding the victim's intention to kill the Defendant. The question before the Court is whether this evidence raises substantial questions regarding Defendant's guilt or innocence? The witness did not see the incident occur or offer any facts regarding the incident that would reasonably undermine Defendant's guilt or innocence. The evidence was not scientific data that assists in establishing Defendant's innocence. Rather the evidence consists of alleged statements made by the victim to an unrelated party regarding his desire to kill the Defendant. It is important to note these statements were made a substantial time before the incident (8 weeks or more) and the statements were not uttered in a short time frame before the incident occurred.

Dkt. 21, Ex. 10 at 2-3.

> In said motion, Defendant sought to withdraw his plea entered on January 5, 2001, because "there exists an exculpatory witness to testify that the defendant was in fact in fear of his own life and used the force only necessary to protect the defendant's own life." Defendant asserted that said witness was previously unknown to Defendant or his trial counsel.
>
> After considering the motion, record, and applicable laws, this Court finds that the above claim is not cognizable in a Rule 3.170 motion. See Fla. R. Crim. P. 3.170(l) and Fla. R. App. P. 9.140(b)(2)(B)(i)-(v).[6] . . . .
>
> It is therefore **ORDERED AND ADJUDGED** that Defendant's motion is hereby **DENIED**.

Dkt. 21, Ex. 8 (footnote added).

On February 9, 2001, Petitioner filed an undated notice of appeal from the January 5, 2001 judgment and sentence (Dkt. 21, Ex. 2). Unable to determine the date Petitioner provided the notice of appeal to prison officials for mailing,[7] the state appellate court directed the Public Defender's Office to respond and show cause why Petitioner's appeal should not be dismissed as untimely. See Johnson v. State, Case No. 2D01-1118 (Fla. 2d DCA 2001). On April 25, 2001, the Public Defender's Office responded, stating that it had not been successful in its attempts to contact Petitioner, but would continue the attempt (Dkt. 21, Ex. 3). In response to the state appellate court's May 8, 2001 order directing it to file a supplemental response, see Dkt. 21, Ex. 4, the Public Defender's Office stated that Petitioner had not responded to its inquiries, see Dkt. 21, Ex. 5. On July 20, 2001, the state

---

[6] Rule 3.170(l) erroneously cited to Rule 9.140(b)(2)(B)(i)-(v). The appellate rule was renumbered effective January 1, 2001, see Amendments to Florida Rules of Appellate Procedure, 780 So.2d 834, 863 (Fla. 2000); the criminal procedural rule was amended to change the reference to Rule 9.140 to correctly identify the appropriate subdivision of that rule effective January 1, 2003, see Amendments to Florida Rules of Appellate Procedure, 837 So.2d 924, 863 (Fla. 2002). The citation should be to Rule 9.140(b)(2)(A)(ii)(a)-(e).

[7] Extending its holding in Haag v. State, 591 So.2d 614 (Fla. 1992), that an inmate's document is deemed "filed" when he or she places it in the hands of prison officials, the Florida Supreme Court has held that there is a presumption that documents filed by pro se prisoners were "filed" on the date stated in the certificate of service attached to the document. See Thompson v. State, 761 So.2d 324, 326 (Fla. 2000). Where the prisoner fails to include a certificate of service with the document, Florida courts will accept the notarization date as the filing date. See Rector v. State, 668 So.2d 1104 (Fla. 4th DCA 1996).

appellate court dismissed the appeal as untimely (Dkt. 21, Ex. 6). *See Johnson v. State*, 793 So. 2d 946 (Fla. 2d DCA 2001) (table decision).

Because Petitioner's notice of appeal was not timely filed, it had no tolling effect on the limitation period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 413 (a petition filed after a time limit has expired is not "properly filed" for tolling purposes); *Sibley v. Culver*, 377 F.3d 1196, 1202 (11th Cir. 2004). Since he failed to perfect an appeal, Petitioner's federal limitation period commenced to run on February 4, 2001. *See McGee v. State*, 684 So. 2d 241, 242 (Fla. 2d DCA 1996) (treating the judgment and sentence upon entry of a plea as final when the time for filing an appeal expired).

Absent tolling by a "properly filed" application for state post-conviction relief, Petitioner had until February 4, 2002, to file his petition for federal habeas relief. *See* 28 U.S.C. § 2244(d)(1). Petitioner delayed filing his petition until December 29, 2004, and he did not file an application for state post-conviction relief until February 15, 2002, eleven days after the limitation period expired (Dkt. 21, Ex. 9). Thus, none of Petitioner's applications for state post-conviction relief had any tolling effect on the AEDPA's limitation period because they were filed after it expired and once the limitation period expires, it cannot be reinitiated. *See Tinker v. Moore*, 255 F.3d 1331, 1333-34 (11th Cir. 2001), *cert. denied*, 534 U.S. 1144 (2002).

Given this chronology of events, more than one year elapsed between the date Petitioner's conviction became final and the date on which he filed the instant petition. Unless Petitioner establishes that he is entitled to proceed under one of § 2244(d)'s statutory tolling provisions, the petition is procedurally barred. *See* § 2244(d)(1)(B)-(D).

Petitioner contends that he is entitled to proceed under § 2244(d)(1)(D), which delays the running of the one-year limitation period until "the date on which the factual

predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner asserts that the one-year limitation period did not begin to run until he received an affidavit from Mr. James A. Higgs detailing testimony he would have given had he been called to testify on Petitioner's behalf (Dkt. 1 at 5A).

Petitioner is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim. While he did not receive Mr. Higgs's affidavit until on or about January 2, 2002, Petitioner acknowledges that "the factual predicate of the claim . . . presented" in the § 2254 petition was made known to him at the latest on January 12, 2001[8] – "only a week after [he] entered his nolo contendere plea" (Dkt. 1 at 5B).[9] See Flanagan v. Johnson, 154 F.3d 196, 198-99 (5th Cir. 1998) (limitation period was not tolled under § 2244(d)(1)(D) until the petitioner obtained an affidavit that supported his claim where the record established that the factual predicate of the petitioner's claim was known to him well before the limitation period expired under § 2244(d)(1)(A)). Petitioner has not shown that a state created impediment prevented him from filing a timely petition and his claim is not based on a constitutional right newly recognized and made retroactive in application by the Supreme Court. See 28 U.S.C. § 2244(d)(1)(B)-(D).

---

[8] Petitioner asserted to the contrary in his Rule 3.850 motion, stating that "Higgs offers the exculpatory statement that on July 1, 2000 after been [sic] arrested and while located at the Pinellas County Jail and during a conversation with Defendant, a/k/a Johnny, a/k/a 'J.J.', whom at the time had told him that he was sentenced to a term of 22 years imprisonment and then pulled out a newspaper clipping of his case which had a photo of the victim on it and at that point is when newly discovered witness knew that he pertained [sic] exculpatory information." Dkt. 21, Ex. 9 at 5-6. Since Petitioner was incarcerated in the Pinellas County Jail from February 6, 2000, see Dkt. 21, Ex. 16 at 2, until he was placed in the custody of the Florida Department of Corrections on January 18, 2001, the possibility that Petitioner made a scrivener's error in recording the year in which he had this conversation with Mr. Higgs appears unlikely.

[9] See also Dkt. 21, Ex. 7, Motion to Withdraw Plea filed on February 5, 2001 asserting a claim of newly discovered evidence based on exculpatory testimony.

-6-

Section 2244 "permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (quoting *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir. 1999) (*per curiam*)). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew v. Dept. of Corrs.,* 297 F.3d 1278, 1286 (11th Cir. 2002). The "extraordinary circumstances" must relate to the untimeliness of the filing rather than the underlying conviction. *See Helton v. Sec. for the Dep't. of Corrs.,* 259 F.3d 1310, 1314-15 (11th Cir. 2001).

In his response to the show cause order, Petitioner asserts that his petition is timely because the limitation period did not begin to run until the 90-day window accorded criminal defendants to file a petition for certiorari under Sup. Ct. R. 13.1[10] expired. *See Bond v. Moore,* 309 F.3d 770 (11th Cir. 2002). Petitioner is mistaken. Rule 13.1 contemplates a judgment entered by a state court of last resort. In Petitioner's case, because he did not perfect a timely appeal from the judgment and sentence imposed upon entry of his plea, there was no decision from a state court of last resort from which to seek certiorari review in the Supreme Court.

Petitioner has failed to allege, much less establish, that extraordinary circumstances that were both beyond his control and unavoidable with diligence prevented him from presenting his claim before the limitation period expired, which are essential elements for the imposition of equitable tolling.

---

[10]"Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." Sup. Ct. R. 13.1.

While the Eleventh Circuit has yet to address this issue in the context of AEDPA's limitation period, generally, a procedural default may be excused if the petitioner can show failure to address the claim on the merits would lead to a fundamental miscarriage of justice, often referred to as the "actual innocence" exception. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Assuming, without deciding, that an "actual innocence" exception to the limitation period exists, the Court finds that Petitioner fails to state a colorable claim of actual innocence.

A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must demonstrate that "a *constitutional* violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (emphasis added). This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell,* ___ U.S. ___, 126 S.Ct. 2064, 2076-77 (2006); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schulp v. Delo*, 513 U.S. at 327-28). In this context, Petitioner must show constitutional error coupled with "newly discovered evidence" that was not presented at trial which would establish <u>factual</u> innocence rather than mere <u>legal insufficiency</u>. *Id*; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup v. Delo*, 513 U.S. at 316 (holding that "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); *High v. Head*, 209 F.3d 1257, 1270 (11th Cir. 2000) (citation omitted).

Petitioner's assertion that he acted in self-defense[11] is inconsistent with an "actual innocence" argument. Having considered the parties' arguments, applicable statutes, and controlling case law, the Court finds that there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of Petitioner's claim. See *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists." *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996). It would, therefore, be improper for this Court to address the merits of the claim asserted in the petition. See *Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

## Conclusion

For the foregoing reasons, the Court finds that the petition is time-barred under the provisions of § 2244(d).

ACCORDINGLY, the Court **ORDERS** that:

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

---

[11] As discussed above, Petitioner's claim of actual innocence is premised on the alleged availability of Mr. Higgs to testify on Petitioner's behalf. According to Petitioner, Mr. Higgs would testify that the victim "bragged of his intent to kill Petitioner," supporting Petitioner's version of the events leading to the victim's death (Dkt. 1 at 5C). According to Petitioner, when he met Mr. Higgs they were inmates in the Pinellas County Jail and "[i]t was on or about January 12, 2001, that Petitioner was informed by [Mr.] Higgs that he had information pertaining to Petitioner's case" (Dkt. 1 at 5A). Mr. Higgs has purportedly executed an affidavit stating that had he been called to testify on Petitioner's behalf, he would have testified that the day before the victim's death, he heard the victim say he was going to kill Petitioner. Notably, Petitioner acknowledged in his Rule 3.850 appellate brief that Mr. Higgs's purported testimony would relate to events which occurred 8 weeks before the victim's death (Dkt. 15 at 4). Moreover, Petitioner does not assert that Mr. Higgs witnessed the killing, and he failed to file a copy of Mr. Higgs's affidavit. Assuming that the testimony were admissible under Florida's evidentiary rules, the mere fact that the victim had at some time in the past stated to Mr. Higgs that he wanted to kill Petitioner does not, standing alone, cast doubt on Petitioner's guilt as the victim's statement to Mr. Higgs was not communicated to Petitioner until well after the victim's death. Petitioner remains unable to identify any purported witness other than Mr. Higgs who would testify on his behalf, and he has failed to produce any evidence that would support finding that unidentified "friends and family" of the victim, were they to agree to testify, would give testimony that would support his assertion that he killed the victim in self-defense.

-9-

    2. The Clerk is directed to enter judgment against Petitioner, terminate all pending motions, and close this case.

    **ORDERED** in Tampa, Florida, on _February 14th_, 2007.

_/s/ Whittemore_
James D. Whittemore
United States District Judge

<u>Copies furnished to</u>:
All Parties/Counsel of Record
SA:jsh